93 P.3d 708

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Misty Dawn OLPIN, Defendant– Appellant.**

No. 29765.

Court of Appeals of Idaho.

June 16, 2004.

Molly J. Huskey, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Melissa Nicole Moody, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Misty Dawn Olpin appeals from the district court's restitution order entered after she pled guilty to grand theft. We affirm.

## I.

## BACKGROUND

In July of 2002, the manager of a Twin Falls restaurant where Olpin worked reported over $20,000.00 in receipts missing from the store's bank account. Olpin later confessed to taking some of that money and was charged with one count of grand theft, I.C. §§ 18-2403(1), 18-2407(1)(b), to which she pled guilty. After entering a judgment of conviction and sentencing Olpin to an eight-year term of imprisonment, with four years determinate, the district court suspended her sentence, placed her on a five-year term of probation, and ordered her to pay $22,414.13 in restitution to the company that owned the restaurant and to its insurer. Olpin contested the restitution amount. After a restitution hearing, the district court issued an amended restitution order totaling $23,164.13, which consisted of the amount of money stolen, bank fees the company paid to obtain deposit records, wages for the time that the company's administrative employees spent researching the missing deposits, and expenses a company vice president incurred to testify at the restitution hearing.

On appeal, Olpin contends that the restitution amount ordered by the district court is excessive. Specifically, she challenges the inclusion of the costs for researching the missing deposits and the vice president's court appearance. She also argues that the district court did not consider her ability to pay the restitution award, as directed by statute.

## II.

## ANALYSIS

Idaho's victim restitution statute, I.C. § 19-5304, provides that a court, unless it determines that restitution would be inappropriate or undesirable, shall order a defendant found guilty of any crime that results in an economic loss to the victims to make restitution to those victims. I.C. § 19-5304(2). The policy behind the statute favors full compensation of crime victims who suffer economic loss. See State v. Richmond, 137 Idaho 35, 38, 43 P.3d 794, 797 (Ct.App.2002). Restitution orders also operate for the benefit of the state, in part because they promote the rehabilitative and deterrent purposes of the criminal law. See State v. Hamilton, 129 Idaho 938, 942–943, 935 P.2d 201, 205–206 (Ct.App.1997); State v. Breeden, 129 Idaho 813, 815–816, 932 P.2d 936, 938–939 (Ct.App. 1997).

The decision whether to order restitution is within the trial court's sound discretion, guided by the statute and the policies behind it. See Richmond, 137 Idaho at 37, 43 P.3d at 796. In reviewing the trial court's exercise of discretion, this Court must determine whether the trial court: (1) correctly perceived the issue as one involving the exercise of discretion; (2) acted within the outer boundaries of its discretion and consistently with any legal standards applicable to specific choices it had; and (3) reached its decision by an exercise of reason. Id.

### A. Costs for Employee Research and Court Appearances

Olpin argues that the district court ordered an excessive restitution award. She contends that the amounts awarded for the victim's costs in investigating missing deposits and for the vice president's expenses in testifying at the restitution hearing are not authorized under I.C. § 19-5304.

■ In this case, four employees of the victim management company researched the exact amount of the missing deposits. At the restitution hearing, the state presented a letter from the company that listed the value of each employee's contribution to the research, equal to the product of the employee's pay rate and the number of hours worked, totaling $3,995.76. Additionally, the company's vice president of operations testified that he had incurred approximately $750 in costs in coming to court that day. Olpin offered no objection to any of this evidence and did not present any evidence to challenge either figure.

Under I.C. § 19–5304(2), the trial court may order restitution for any economic loss that the victim actually suffers. The statute gives a broad definition of economic loss:

> "Economic loss" *includes, but is not limited to,* the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death, or emotional distress.

I.C. § 19–5304(1)(a) (emphasis added).

Here, as a result of Olpin's crime, employees of the victim business spent time away from their normal duties in order to determine the extent of Olpin's theft. The resulting loss of productivity is closely analogous to "lost wages," listed in I.C. § 19–5304(1)(a) as an example of economic loss appropriately included in a restitution award because, during the time that employees were diverted, the victim business lost the benefit of its employees' labor for other tasks. The salary portions that the victim paid for its employees' accounting work are "direct out-of-pocket expenses," also listed in I.C. § 19–5304(1)(a) as an example of economic loss,

because the victim here paid for labor it would not have needed but for Olpin's theft.[1]

The victim's expenses in sending its vice president to the restitution hearing are much like its expenses for the time its employees spent on research, and the same analysis applies. Moreover, this Court has previously said that court attendance costs may be awarded under I.C. § 19–5304. *State v. Russell,* 126 Idaho 38, 39, 878 P.2d 212, 213 (Ct.App.1994). In *Russell,* this Court held that a self-employed victim who took time off work to appear at a restitution hearing had suffered economic loss within the meaning of I.C. § 19–5304(1)(a). *Id.* Likewise, because of Olpin's offense, the victim in this case lost the full value of the time its vice president spent attending court proceedings.

Therefore, in light of the statute's broad definition of economic loss and the deterrent and rehabilitative aspects of victim restitution, we conclude that the restaurant owner here suffered economic loss, as contemplated by I.C. § 19–5304(1)(a), when its employees were diverted from their normal duties to investigation and court attendance tasks as a result of Olpin's offense.

**B. Ability to Pay**

■ Olpin also argues that the restitution order should be vacated and the case remanded because, she contends, the district court did not consider her ability to pay the restitution award. Idaho Code § 19–5304(7) provides that a court "shall consider ... the financial resources, needs and earning ability of the defendant." Under this provision, inability to pay neither precludes nor limits a restitution award; rather, ability to pay is only one factor for a court's consideration when it makes a discretionary restitution determination. *State v. Taie,* 138 Idaho 878, 880, 71 P.3d 477, 479 (Ct.App.2003); *see also State v. Bybee,* 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct.App.1989) (affirming restitution

---

1. The inclusion of investigation costs in victim restitution awards is consistent with other state courts' interpretations of similar statutes. *See People v. Duvall,* 908 P.2d 1178 (Colo.Ct.App. 1995) (upholding restitution award for value of time during which employees were diverted, as a result of defendant's theft, from "doing other things for the company"); *State v. Wilson,* 100 Wash.App. 44, 995 P.2d 1260 (2000) (upholding award for investigation expenses incurred in ascertaining the extent of defendant's embezzlement); *State v. Johnson,* 69 Wash.App. 189, 847 P.2d 960 (1993) (upholding award for expenses incurred investigating business records after defendant's embezzlement).

order despite believing it unlikely that the victim would ever pay the full amount). Additionally, a court may order restitution in contemplation of future ability to pay. *Bybee*, 115 Idaho at 543, 768 P.2d at 806.

At the restitution hearing in this case, Olpin did not present evidence or argument to show that she would be unable to pay the restitution award. On appeal, however, she points to her lack of assets, her housing and health care costs, and her hourly wage as factors that the district court failed to consider. Although the district court did not specifically state that it gave consideration to Olpin's financial situation, this information was included in the presentence investigation report, which contemplated a restitution order, recommending that Olpin be held responsible for fines, costs, and restitution, and which was available to the district court prior to the sentencing hearing and referred to during the restitution hearing. Also, during the sentencing hearing, the district court questioned Olpin about her current employment and ordered her, as a probation condition, to maintain full-time employment. Therefore, we are not convinced that the district court failed to adequately consider Olpin's ability to pay restitution.

## III.

## CONCLUSION

Olpin has not shown that the restitution order entered by the district court exceeded the bounds of the district court's permissible choices, was inconsistent with the applicable legal standards, or was not based upon an exercise of reason. *See Taie*, 138 Idaho at 880, 71 P.3d at 479. Thus, Olpin has failed to show that the district court erred in ordering restitution in the amount of $23,164.13. Accordingly, the district court's order of restitution is affirmed.

Chief Judge LANSING and Judge PERRY concur.