192 P.3d 1101

**In the Matter of John DOE, A Minor Under 18 Years of Age State of Idaho,**

**State of Idaho, Plaintiff–Appellant,**

v.

**John Doe, Defendant–Respondent.**

No. 34295.

Court of Appeals of Idaho.

June 9, 2008.

Review Denied Sept. 26, 2008.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for appellant. Jessica M. Lorello argued.

Alan E. Trimming, Ada County Public Defender; Cameron D. Cook, Deputy Public Defender, Boise, for respondent. Cameron D. Cook argued.

GUTIERREZ, Chief Judge.

The state appeals from the district court's order affirming the magistrate's denial of restitution for medical expenses. For the reasons set forth below, we reverse and remand.

## I.

### FACTS AND PROCEDURE

The state filed a petition alleging Doe was within the purview of the Juvenile Corrections Act and that on June 28, 2005 he had committed aggravated battery by striking C.L. "in the face and/or head with a tire iron." Doe entered an *Alford*[1] plea, admitting he had struck C.L., but denying he had used a tire iron. The magistrate accepted Doe's plea and scheduled a restitution hearing.

At the restitution hearing, C.L. testified that as a result of the battery, he had sustained an "upper broken jaw, broken cheekbone, and several broken teeth." He stated that after the attack, he was taken by ambulance to the hospital where he received emergency treatment for his injuries and also testified that he had not had these type of services performed for any other purpose during the relevant time period. He subsequently received dental treatment and consulted with a specialist to determine whether his jaw injury required surgery. To prove the amount of restitution requested, the state attempted to introduce a photograph of C.L. showing some of his injuries and copies of six different medical bills C.L. testified he had received for treatment of injuries stemming from the battery.[2] Counsel for Doe and Doe's guardian[3] objected to admission of the bills, both arguing there was insufficient foundation that the services rendered were reasonable, medically necessary, and "linked"

to Doe's actions. The magistrate agreed, continued the hearing, and informed the state it would "need to get some of these people here to testify about the bills and what services were rendered" and present testimony that the expenses were reasonable and the services rendered were medically necessary.

At the continued hearing, the state indicated it would offer no additional evidence and again moved for the admission of its previously offered exhibits. The magistrate denied the request, stating that "there needs to be a foundation that the victim's receipt of those services were appropriate." The magistrate subsequently issued a written order denying restitution, stating that:

> ... [E]ven if the court had admitted [the] exhibits to establish the victim's economic loss, the State did not establish the necessity or reasonableness of the costs and services, which this court concluded were factors that were appropriate under the circumstances and relevant to reach a decision as to order restitution or not. Therefore it would be inappropriate and undesirable in this case to award restitution with only the proof relating to the victim's economic loss.

The state appealed to the district court, which affirmed the magistrate's order, writing that:

> When the claim is for reimbursement of medical expenses, this means at a minimum that the State must establish by competent evidence that (1) the medical treatment was reasonably necessary for the medical condition presented, (2) the expense was reasonable and customary for the service provided, and (3) that the medical condition was proximately caused or related to the occurrence in the suit—i.e.,

---

1. See *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

2. The bills presented were for services provided on June 28, 2005 from St. Alphonsus Regional Medical Center for $4,741.30, Ada County Paramedics for $766.44, Gem State Radiology for $511.50, and Idaho Emergency Physicians, P.A. for $684.11, as well as charges from Gray and Smith Family Dental, P.A. for $325.59 and Southwest Idaho Ear Nose & Throat, P.A. for

$156.50 for services presumably provided on later dates.

3. In addition to Doe's counsel, counsel for Doe's guardian and counsel for Doe's mother were also present at the initial restitution hearing. There was some discussion at the outset of the hearing as to who would be responsible between Doe's guardian and mother for any restitution ordered. The magistrate reserved ruling on the issue.

the criminal activity for which the defendant was charged. To merely show that the expense was incurred following the event is not sufficient. To merely produce bills without competent explanation or interpretation connecting the bills to the key questions is not sufficient. In all but the most elementary medical claims, a lay witness—such as a victim—will usually not be competent to provide the necessary medical explanations for a foundation.

In some case [sic], it may be necessary to have the medical providers present evidence. In other cases, it may be sufficient to supply the medical records or charts by way of explanation. In other cases, other witnesses or evidence may be able to provide answers to key questions.... [E]ach of these key foundation questions must be answered with regard to each claim.

The state now appeals.

## II.

## ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 183 P.3d 758 (2008). We review the magistrate's findings to determine whether they are supported by substantial and competent evidence. *Losser*, 145 Idaho at 672, 183 P.3d at 760.

### A. Admission of Exhibits

The district court affirmed the magistrate's decision noting that there was no evidence aside from C.L.'s testimony that the expenses reflected in the bills were tied to injuries that were a result of Doe's actions or that the treatments were medically necessary.[4] The state, however, argues that because C.L. provided foundation for the exhibits by testifying the bills were those he received for medical services rendered as a result of Doe's battering of him, the magistrate erred in refusing to admit them.

A trial court has broad discretion concerning the admission of evidence, and its judgment will be reversed only upon an abuse of that discretion. *State v. Howard*, 135 Idaho 727, 731–32, 24 P.3d 44, 48–49 (2001); *State v. Zimmerman*, 121 Idaho 971, 973–74, 829 P.2d 861, 863–64 (1992). The party offering an exhibit must lay foundation through a witness or witnesses who can identify the proffered items as being connected with the crime. *State v. Simmons*, 120 Idaho 672, 678, 818 P.2d 787, 793 (Ct.App.1991).

While Idaho courts have not ruled on this issue in the context of a restitution hearing, our Supreme Court has addressed the admission of summaries of medical bills and attached records in the course of a personal injury trial. In *Van Brunt v. Stoddard*, 136 Idaho 681, 686, 39 P.3d 621, 626 (2001), the defendant objected to introduction of summaries of various medical bills and records[5] offered by the plaintiff where the admission was based on the plaintiff's testimony relating to the medical expense summary that he had prepared. The defense argued that, since only the plaintiff had testified, the summaries were admitted without foundation showing the treatment was reasonably related to the accident and that the amounts of the bills were reasonable for the services provided. The court held, however, that

---

4. On appeal, Doe includes Idaho Rule of Evidence 401, 402, and, 403, as grounds also mandating exclusion of the exhibits. However, Doe's objection to admission of the exhibits was based solely on grounds that there was insufficient foundation for their admittance and the trial court addressed the issue within these confines. Accordingly, we will not address the alternate grounds upon which Doe argues the evidence should have been excluded. *See State v. Stevens*, 115 Idaho 457, 459, 767 P.2d 832, 834 (Ct.App. 1989) ("[A]n objection on one ground will not be deemed sufficient to preserve for appeal all objections that could have been raised.")

5. We recognize that *Van Brunt v. Stoddard*, 136 Idaho 681, 686, 39 P.3d 621, 626 (2001), was decided in regard to the admission of *summaries* of medical bills and medical records as opposed to the bills and records themselves, as is at issue in this case. However, the court noted that for summaries to be admissible, the underlying documents upon which the summary relies must be shown to have been admissible. As a result, the court goes on to render its holding in the context of the admissibility of the underlying documents, making the decision applicable to the case at hand.

"[o]rdinarily, testimony by the patient or by the physician or the health care provider on the amounts charged or paid for medical services is sufficient evidence of the reasonable value of the services in the absence of some showing to the contrary." *Id.* The court continued, noting that where the record reveals direct testimony that the injuries and resulting medical expense incurred after the incident were proximately caused by the injuries received in the incident, there is no error in the admission of the medical bill and treatment summaries. *Id.*

Here, C.L. testified at the restitution hearing from general personal knowledge as to the injuries he sustained as a result of the attack, the medical treatment he received for these injuries, and that the medical bills offered as exhibits represented the cost of medical treatment made necessary by Doe's attack. Doe offered no countervailing evidence on these points. In this context, we examine the admissibility of each of the exhibits individually.

■ We conclude that Exhibit 1, the photograph of C.L., should have been admitted. C.L. testified at the hearing that he was the person in the photograph and that it accurately showed his condition after the incident. This was sufficient to provide a foundation for its admission.

■ Exhibit 2, the bill from St. Alphonsus Regional medical Center for $4,741.30, also should have been admitted as there was sufficient evidence presented tying it to the attack. Not only did C.L. testify that he had been taken to St. Alphonsus and was treated there after being battered, but the bill itself identifies C.L. as the patient and lists the date of the services provided as the same date the attack occurred. Importantly, the bill also provides a descriptive breakdown of services provided to C.L., allowing the inference that these are treatments that would logically be provided to a victim who had been struck in the face.

■ The court also erred in excluding Exhibit 3, the bill from Ada County Paramedics for $766.44. That C.L. received these services as a result of the crime was supported by C.L.'s testimony that he was taken from the scene to St. Alphonsus in an ambulance. Additionally, the bill lists the date of the trip as the same date the attack occurred, indicates that C.L. was the person transported, and notes that he was taken from the scene of the crime (9140 Emerald St.) to St. Alphonsus (1055 N. Curtis). The bill also provides a descriptive breakdown of services provided and the amounts charged for each. This information in concert with C.L.'s testimony provided adequate foundation for its admission.

■ The court did not err in excluding Exhibit 4, the bill from Gray and Smith Family Dental, P.A. for $325.59. Its admission is problematic because while C.L. testified that he received dental services after the incident from "Doctor Smith's office, or Greer, or something" and the bill is addressed to him, the bill itself provides no other information linking it to the assault in the case. It does not list the date the services were provided (with the date of the bill being significantly removed from the date of the incident) and in fact, lists the patient's name as "Debra" in regard to the finance charge. Furthermore, when questioned about this seeming discrepancy as to whose dental care is being billed, C.L.'s answers did not resolve the question. The bill also does not provide any descriptive information regarding the services provided that would allow it to be logically linked to C.L.'s injury from the battery. In sum, even considering the exhibit itself in concert with C.L.'s testimony at the restitution hearing, there was still not sufficient foundation laid for its admittance. Accordingly, we conclude it was not error to exclude this exhibit.

■ Exhibit 5, the bill from Gemstate Radiology for $511.50, should have been admitted. The bill lists C.L. as the patient and the location of services as St. Alphonsus on June 28, 2005, the date of the crime. In addition, C.L. testified that he had received "x-rays" at St. Alphonsus on the day he sustained his injuries, and the bill provides a descriptive break-down of those services performed, helping to link the bill to injuries from the assault. This information was sufficient to provide a foundation for its admission.

Exhibit 6, the bill from Southwest Idaho Ear Nose & Throat, P.A. for $156.50, also should have been admitted as sufficient foundation was laid. After viewing a copy of the bill at the hearing, C.L. testified that it represented charges for when he saw a specialist for the injuries he sustained from the attack. In addition, the bill lists C.L. as the patient and the date of services provided (7/11/2005) was within days of the incident.

Finally, we conclude that Exhibit 7, the $684.11 bill from Idaho Emergency Physicians P.A., also should have been admitted. The exhibit lists C.L. as the patient and the date of the bill is under three months removed from the incident. Also compelling, it is logical that Exhibit 7 was the bill from the emergency room physicians responsible for treating him, especially where the St. Alphonsus bill references that such emergency services were provided. The connection between Exhibit 2 and Exhibit 7 is enhanced by the fact that the account number listed on Exhibit 7 ("A2517908604") is virtually similar to the account number of the bill from St. Alphonsus ("A0517908604") as both begin with the letter "A" and consist of ten digits. Furthermore, at the restitution hearing, C.L. testified that the costs represented by the bill were those incurred as a result of his injuries on June 28th.

In sum, we conclude that the evidence presented by the state was sufficient to establish the necessary foundation for the admission of Exhibits 1, 2, 3, 5, 6, and 7. Accordingly, the district court erred in affirming the magistrate's exclusion of these exhibits.

## B. Restitution

Having determined that certain exhibits offered by the state should have been admitted, we now examine whether the court erred in denying restitution. The state argues the decision was an abuse of discretion because neither the plain language of the restitution statute nor the policy behind it requires a victim to prove that treatment was necessary or the costs of treatment reasonable in order to be entitled to restitution. Rather, the state asserts restitution should be based solely on the amount of economic loss sustained by a victim without regard to the reasonableness or medical necessity of the amount.

Awards for the payment of restitution to crime victims are governed by I.C. § 19–5304. *See State v. Taie,* 138 Idaho 878, 879, 71 P.3d 477, 478 (Ct.App.2003). The statute provides that a court, unless it determines restitution would be inappropriate or undesirable, shall order a defendant found guilty of any crime that results in economic loss to the victim to make restitution to that victim, I.C. § 19–5304; *State v. Olpin,* 140 Idaho 377, 378, 93 P.3d 708, 709 (Ct.App.2004), as guided by the factors set forth in I.C. § 19–5304(7). Those factors include consideration of the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and other factors deemed appropriate by the court. *State v. Hamilton,* 129 Idaho 938, 942, 935 P.2d 201, 205 (Ct. App.1997); *State v. Bybee,* 115 Idaho 541, 768 P.2d 804 (Ct.App.1989).

The policy behind the statute favors full compensation of crime victims who suffer economic loss. *Olpin,* 140 Idaho at 378, 93 P.3d at 709. One of the purposes of restitution is to obviate the need for victims to incur the cost and inconvenience of a separate civil action in order to gain compensation for their losses. *State v. Parker,* 143 Idaho 165, 167, 139 P.3d 767, 769 (Ct.App. 2006); *State v. Waidelich,* 140 Idaho 622, 624, 97 P.3d 489, 491 (Ct.App.2004); *Bybee,* 115 Idaho at 543, 768 P.2d at 806. Restitution orders also operate for the benefit of the state, in part because they promote the rehabilitative and deterrent purposes of the criminal law. *Olpin,* 140 Idaho at 378, 93 P.3d at 709.

Restitution may be ordered only for actual economic loss suffered by a victim. I.C. §§ 19–5304(1)(a), (2). Idaho Code, Section 19–5304(1)(a) states in relevant part:

"Economic loss" includes, but is not limited to the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not

include less tangible damage such as pain and suffering, wrongful death or emotional distress.

Idaho Code Section 19–5304(6) provides that determination of economic loss be based upon the civil preponderance of evidence standard. *State v. Smith*, 144 Idaho 687, 695, 169 P.3d 275, 283 (Ct.App.2007). Thus, the amount of the award must be supported by substantial evidence. *Taie*, 138 Idaho at 879, 71 P.3d at 478; *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct.App. 1997).

 The decision whether to require restitution is committed to the trial court's discretion. *Taie*, 138 Idaho at 879, 71 P.3d at 478. An abuse of discretion may be shown if the order of restitution, or refusal to issue an order of restitution, was the result of arbitrary action rather than logical application of proper factors as set out by I.C. § 19–5304(7). *See Bybee*, 115 Idaho at 543, 768 P.2d at 806. The argument raised by the state also requires us to interpret the language of the statute. We exercise free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct.App.2003).

The language of the restitution statute does not explicitly require a showing that restitution for medical costs be "reasonable" and be "medically necessary." The state argues that since the plain language of the statute makes no reference to proving these factors, we must find it was error to impose the standard. Furthermore, it contends that adopting the standard articulated by the magistrate in this case would be unfair and undermine the policy behind the restitution statute to compensate victims who suffer economic loss.

In reading the statute in context, we cannot say that it wholly disregards reasonableness and necessity as factors shaping a court's restitution order-while those terms are not explicitly mentioned, they are *inherent* in the finding of actual "economic loss" as

prescribed by the statute. Again, we turn to *Van Brunt*, 136 Idaho at 686, 39 P.3d at 626, which we believe is instructive. No doubt recognizing the difficulty a victim faces in proving the necessity and reasonableness of expenses for medical care, our Supreme Court held that under normal circumstances, testimony by the patient (or physician or health care provider) on the amounts charged or paid for medical services is sufficient evidence of the reasonable value of the services in the absence of some showing to the contrary.[6] This essentially establishes a *prima facie* case that the medical care a victim received was reasonable, and we believe addresses the "necessity" and "reasonable expense" prongs as well, but leaves the door open for a defendant to challenge the *prima facie* case if such evidence exists.

Support for establishing the initial burden of proof in regard to restitution for economic loss lies in several cases addressed by this Court over the years. In *State v. Doe*, 140 Idaho 873, 103 P.3d 967 (Ct.App.2004), this Court addressed a defendant's claim that the magistrate abused its discretion in awarding an excessive amount in restitution to a minor victim's parents for lost wages incurred while attending court proceedings and other matters related to the case. The magistrate awarded $3,300 for lost income from self-employment based on the victim's father's gross earnings per day for eleven days and $2,700 for the victim's mother's lost wages based on her daily average wage and nine days missed from work. We held that the record supported the ruling where there was a letter from the victim's father, as well as his testimony at the restitution hearing, that supported the amount of the award and where there was no other evidence in the record to contest the amounts. *Id.* at 880–81, 103 P.3d at 974–75.

In *Taie*, 138 Idaho 878, 71 P.3d 477, after the defendant caused an accident when driving under the influence of alcohol and drugs, he argued that there was insufficient evi-

---

6. In *Van Brunt,* only the plaintiff testified in regard to admission of the summaries of the medical bills and records attached. We note that during the course of the trial the plaintiff's primary treating physicians testified as to the care they had provided the plaintiff and the defendant's medical expert testified regarding his findings after an independent medical examination of the plaintiff.

dence to support an award of restitution for the damage to the victim's motorcycle and to a company's fence. Specifically, objection to the award of restitution was made on the basis that the victim had not presented any estimate or invoice showing the actual or estimated cost of repair. The state presented testimony from the victim stating that his insurer had paid approximately $4,900 for damage to the motorcycle, a figure that was corroborated by a letter from the insurer stating that it had paid the victim $4,902.74 in insurance benefits for the damage. In regard to the fence, the state presented a letter from the company's insurer stating the damage was $3,695, including both the insurer's payment and the company's $500 deductible. The court awarded the full amount requested. Upon this record, we noted that the state had presented evidence of the insurer's economic loss in the form of a statement of benefits paid and there was nothing in the record indicating that the payments were for an amount greater than the insurance companies were obligated to pay under the insurance contracts. We also noted that Taie did not present any evidence that the insurance payments were inflated or unreasonable in relation to the property damage that he caused and thus, the restitution award was supported by sufficient evidence. *Id.* at 880, 71 P.3d at 479.

Furthermore, the text of the statute itself demonstrates the intent that rules of evidence be more relaxed in this context than if the state was forced to bring a separate civil action to recover restitution. The statute explicitly lowers one evidential bar in restitution hearings, allowing that "[e]ach party shall have the right to present such evidence as may be relevant to the issue of restitution, and the court may consider such *hearsay* as may be contained in the presentence report, victim impact statement or otherwise provided to the court." I.C. § 19–5304(6) (emphasis added). This, in concert with the policy behind the statute of full compensation for crime victims without the inconvenience and inefficiency of having to file a separate civil action, convinces us that it is not the intent of the statute to maintain the strict level of evidentiary requirements in restitution hearings that is required in trials.

We conclude the magistrate's and district court's rigid requirement that the state offer testimony or evidence beyond that of the victim and his medical bills to establish a *prima facie* case of the necessity and reasonableness of each medical service provided imposes an unwarranted stricture not imposed by the statute.

We are not in the position, however, to determine whether, based on the exhibits that we have noted here should have been admitted, C.L. is entitled to restitution and if so, how much. The statute dictates that in determining whether to award restitution and the amount thereof, a court must consider, in addition to the amount of economic loss sustained by the victim, "the financial resources, need and earning ability of the defendant, and such other factors as the court deems appropriate." I.C. 19–5304(7). As we do not have sufficient information to weigh these factors, we remand to the magistrate court to take into account the exhibits we have held are admissible, in conjunction with the factors prescribed by the statute, to determine whether to award restitution and to what extent. This is especially true in this case where no evidence to the contrary was submitted on the issue of entitlement to restitution or challenging any of the amounts requested. We also note that given its disposition of the issue, the magistrate never determined which of the parties, between Doe's natural mother and legal guardian, would be responsible for restitution ordered, if any. Thus, should the magistrate decide that restitution is appropriate under the circumstances, this issue must be adjudicated as well. We also instruct that any amount awarded for restitution should be formalized in a civil judgment that may be utilized by the victim to pursue payment of the amount.

## III.

### CONCLUSION

The district court erred in affirming the magistrate's denial of restitution. The testimony of the victim, C.L., along with the medical bills presented a *prima facie* case for an award of restitution. Accordingly, the

order of the district court affirming the magistrate's denial of restitution for medical expenses is reversed and the case remanded for further proceedings consistent with the holdings herein.

Judge PERRY and Judge Pro Tem SCHWARTZMAN concur.