190 P.3d 930

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Robert T. CARD, Defendant–Appellant.**

**No. 34115.**

Court of Appeals of Idaho.

July 2, 2008.

**112**

Palmer, George & Madsen, PLLC, Coeur d'Alene, for appellant. Christopher D. Schwartz argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

LANSING, Judge.

Robert T. Card appeals from the district court's appellate decision affirming the magistrate's award of restitution to a victim injured in a vehicle collision that was caused by Card's unlawful driving. Card contends that the State did not prove that costs incurred by the victim for massages, detoxifying footbaths, and herbal colon cleansings resulted from any injury caused by his crime.[1] We reverse the district court and remand to the magistrate to remove from the restitution order the amount awarded for these treatments.

## I.

## BACKGROUND

On November 19, 2005, Card caused an automobile collision on an interstate highway which resulted in his arrest for misdemeanor driving under the influence of alcohol, Idaho Code § 18–8004. Two people in the other vehicle, Beverly Shelton and her boyfriend, were transported to 'the hospital by ambu-

---

1. In his brief on appeal Card also contended that his due process rights were violated by the prosecution's late disclosure of its restitution evidence and that the magistrate erred in denying Card's motion for a continuance to prepare for the restitution hearing. At oral argument, Card's attorney informed this Court that the due process issue would be moot if this Court reverses the award of restitution for these specifically challenged expenses. Because we reverse those portions of the restitution award, we do not address the due process issue.

lance. Shelton's boyfriend suffered serious injuries for which he was hospitalized, but Shelton was released after x-rays were taken. Card ultimately pleaded guilty and stipulated to an award of restitution for the boyfriend's medical expenses. After a series of continuances, a hearing was conducted to address restitution claimed by Shelton. Four hours before the hearing, the State served on Card a "memorandum of restitution" which consisted of a cover document requesting $6,040.14 in restitution for Shelton and forty-one pages of documents that included her handwritten tabulations regarding her expenses and receipts or bills for expenses she had incurred. Shelton testified at the hearing that she had been taken by ambulance to the hospital after the accident, was x-rayed and was diagnosed with no ascertainable physical injuries. On December 9, she was examined by her regular eye doctor complaining of blurriness of vision and light sensitivity. According to Shelton, this doctor told her that "everything is fine." Shelton did not again seek treatment from the eye doctor. On December 12, Shelton was also examined by an internist because she was complaining of nightmares, reliving the accident, and having stomach/colon problems "from the seatbelt." According to Shelton, the internist wanted to prescribe antidepressants, which Shelton declined. Shelton elected not to seek any further treatment from the internist.

Over a two-month period following the accident, Shelton received seventeen treatments from four chiropractors because of back and neck concerns and six massage treatments, which she said were to loosen her muscles for chiropractic treatment. Shelton testified that she was in perfect health before the accident but also admitted that she had been seeing a chiropractor "over the years" and had seen the massage therapist for five years prior to the accident for maintenance treatment, to which she attributed her perfect health. Shelton also sought treatment from Dr. Tangeman, who, according to Shelton, is a "holistic doctor," because of dizziness, loss of memory, ringing of the ears, and problems with her stomach that Shelton attributed to injury from the seatbelt during the collision. Shelton testified that

Dr. Tangeman recommended colon treatment, which advice Shelton followed by obtaining three herbal colon cleansings. Also apparently pursuant to Dr. Tangeman's advice, Shelton received a "detoxifying footbath" to rid herself of toxins.

On cross-examination, Shelton admitted that no medical doctor diagnosed an injury or prescribed the chiropractic, massage, colon cleansing and footbath treatments that she eventually sought, although she testified that the internist told her that she could continue the chiropractic and massage treatments if she wanted to. She also acknowledged that no medical doctor, chiropractor, or other treatment provider had said that her physical or emotional complaints were caused by the automobile accident. Shelton further admitted that she had disregarded the internist's advice to make an appointment for her colon problems because she did not wish to further "waste her time" with conventional medical treatment, instead preferring holistic colon therapy.

The magistrate granted restitution for all the medical consultations, chiropractic, massage and other treatments or procedures, holding that Shelton's testimony was sufficient to show that her complaints were caused by the accident and that the expenses for alternative or unconventional health treatments were recoverable under Idaho's restitution statute as direct economic losses. Card appealed to the district court, which affirmed. Card now appeals to this Court.

## II.

## ANALYSIS

In reviewing a district court's appellate decision, we examine the record from the magistrate court to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Losser v. Bradstreet*, 145 Idaho 670,

672, 183 P.3d 758, 760 (2008); *Nicholls v. Blaser,* 102 Idaho 559, 633 P.2d 1137 (1981).

■ On this appeal Card asks only that we overturn the restitution awards for massages, colon cleansings and footbaths. He asserts that Shelton's expenses for these procedures do not qualify for restitution because the evidence does not show that they are direct economic losses resulting from his criminal conduct.

Idaho Code § 19–5304(2) authorizes the trial court in a criminal case to "order a defendant found guilty of any crime which results in an economic loss to the victim to make restitution to the victim." Restitution may be ordered "for any economic loss which the victim actually suffers." *Id.* Subsection (1)(a) of the same statute specifies that " 'economic loss' includes, but is not limited to … direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress." Whether to order restitution, and in what amount, is a question committed to the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19–5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Smith,* 144 Idaho 687, 692, 169 P.3d 275, 280 (Ct.App.2007); *State v. Richmond,* 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct.App.2002); *State v. Russell,* 126 Idaho 38, 39, 878 P.2d 212, 213 (Ct.App.1994).

■ One of the purposes of restitution is to obviate the need for victims to incur the cost and inconvenience of a separate civil action in order to gain compensation for their losses. *State v. Parker,* 143 Idaho 165, 167, 139 P.3d 767, 769 (Ct.App.2006); *State v. Waidelich,* 140 Idaho 622, 624, 97 P.3d 489, 491 (Ct.App.2004); *State v. Bybee,* 115 Idaho 541, 768 P.2d 804 (Ct.App.1989). Restitution orders also operate for the benefit of the state, in part because they promote the rehabilitative and deterrent purposes of the criminal law. *State v. Olpin,* 140 Idaho 377, 378, 93 P.3d 708, 709 (Ct.App.2004). The restitution statute is not so broad, however, as to authorize compensation for *every* expenditure that a victim may personally deem rea-

sonable or necessary as a response to a crime. Thus, in *Waidelich,* 140 Idaho at 624, 97 P.3d at 491, we held that restitution could not be ordered for the cost of boarding puppies where the victim of an attempted burglary chose for a period thereafter to board the puppies while she was away from home in order to prevent further thefts.

■ The trial court must base the amount of economic loss to be awarded upon the preponderance of evidence submitted to the court by the prosecutor, defendant, victim, or presentence investigator. I.C. § 19–5304(6); *Smith,* 144 Idaho at 695, 169 P.3d at 283. The appropriate amount of restitution is a question of fact for the trial court, whose findings will not be disturbed if supported by substantial evidence. *State v. Taie,* 138 Idaho 878, 879, 71 P.3d 477, 478 (Ct.App.2003); *State v. Hamilton,* 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct.App.1997).

Strict application of evidentiary rules is not required for proof of restitution claims. The text of the restitution statute itself demonstrates legislative intent that the rules of evidence be relaxed in this context. The statute explicitly lowers one evidentiary bar in restitution hearings by allowing the court to consider "such hearsay as may be contained in the presentence report, victim impact statement or otherwise provided to the court." I.C. § 19–5304(6). In *State v. Doe,* 146 Idaho 277, 192 P.3d 1101, 2008 WL 2331604 (Ct.App. 2008), *petition for rev. pending,* we held that the policy behind the statute of providing full compensation for crime victims without the inconvenience and inefficiency of a separate civil action, also indicates a legislative intent that strict evidentiary standards not be used. *Doe,* 146 Idaho at 285, 192 P.3d at 1109.

■ From the foregoing discussion it is evident that under the restitution statute, a crime must "result" in an economic loss in order for restitution to be awarded, and where treatment expenses are sought, the State bears the initial burden to make a prima facie showing, which may include evidence that would be inadmissible in a civil trial, that the expenses were reasonable and necessary to treat injuries caused by the

defendant's criminal conduct. *Doe,* 146 Idaho at 283, 192 P.3d at 1107.

The question presented in this case is whether the State satisfied this burden on Shelton's challenged treatments under even the relaxed evidentiary burdens applicable to restitution hearings. There were no physicians' letters or notes, hospital records or any medical evidence of any kind indicating that a medical professional had found either that Shelton suffered from *any* identifiable physical condition treatable by the massage, footbath or colon cleansings, or that such condition was causally related to the automobile collision. Shelton's own testimony included not even hearsay statements attributed to any treatment provider that made such a causal connection. Thus, the request for restitution for the challenged items was based solely on Shelton's personal assessment of the cause of her physical complaints and her personal determination of the type of treatment that would be beneficial. Card argues that Shelton's testimony was neither competent nor sufficient to prove that her claimed medical complaints were causally related to the automobile collision.

In examining this issue, we find helpful this Court's decision in *Dodge–Farrar v. American Cleaning Services Co., Inc.,* 137 Idaho 838, 54 P.3d 954 (Ct.App.2002), a personal injury action which presented the question whether the plaintiff's own affidavit about the cause of her injuries was sufficient to prevent summary judgment. We said:

> Idaho Rule of Evidence 701 permits lay witnesses to testify in the form of an opinion or inference only if the opinion or inference is rationally based on the perception of the witness, and the testimony is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. *See Kolln v. Saint Luke's Reg. Medical Ctr.,* 130 Idaho 323, 330, 940 P.2d 1142, 1149 (1997). Although the admission of layperson opinion testimony is usually within the discretion of the district court, the general rule in Idaho is that a layperson is not permitted to testify regarding the cause of a medical condition. *Cook v. Skyline Corp.,* 135 Idaho 26, 35, 13 P.3d 857, 866 (2000); *Bloching v. Albert-*

son's, Inc., 129 Idaho 844, 846, 934 P.2d 17, 19 (1997); *Evans v. Twin Falls County,* 118 Idaho 210, 214, 796 P.2d 87, 91 (1990); *See Flowerdew v. Warner,* 90 Idaho 164, 172, 409 P.2d 110, 115 (1965). This limitation applies, however, only where the subject matter regarding the cause of disease, injury or death of a person is wholly scientific or so far removed from the usual and ordinary experience of the average person that expert knowledge is essential to the formation of an intelligent opinion. *See Evans,* 118 Idaho at 214, 796 P.2d at 91; *Kolln,* 130 Idaho at 330, 940 P.2d at 1149. When alleged injuries are of a common nature and arise from a readily identifiable cause, there is no need for the injured party to produce expert testimony. *Choi v. Anvil,* 32 P.3d 1, 3 (Alaska 2001). Requiring expert testimony in all such cases would needlessly increase the cost of litigation, discourage injured persons from bringing small but legitimate claims, and also burden defendants who might feel compelled to hire their own experts in response. *Id.*

> . . . .

> [W]e conclude that a layperson may testify to the causation of medical symptoms or of injuries where such causation is within the usual and ordinary experience of the average person, and also satisfies I.R.E. 701. For example, if a person fell down some steps, landing on a knee, and immediately thereafter felt pain in the knee, saw an open wound on the knee, and within minutes or hours observed that the knee was swelling, that lay person could provide reliable testimony that the pain, wound and swelling were caused by the fall. A layperson could also testify that medical care obtained to treat those immediate symptoms was causally related to the fall. As the claimed symptoms and treatment become more separated in time from the fall, however, the causal relationship becomes more doubtful and tenuous, and expert testimony becomes necessary to establish causation. As time passes, the possibility that prior or subsequent injuries or unrelated disease processes may play a causal role makes lay opinion unreliable and inadequate to sustain a claim. Accordingly, lay

testimony on causation must be limited to the symptoms which are proximate enough to the injury that lay opinion can be deemed competent and reliable. Just where within the time continuum the line must be drawn to exclude lay testimony is necessarily a decision committed to the trial court's discretion based upon the facts and circumstances of the particular case. In addition, even as to symptoms that appear immediately after the traumatic event, lay opinions may be foreclosed if the causation question is not a matter within the common knowledge and experience of the average person. Thus, in the foregoing hypothetical, a layperson might be precluded from testifying that a skin rash which appeared on her arms immediately after the fall was causally related to the fall.

*Dodge–Farrar*, 137 Idaho at 841–43, 54 P.3d at 957–59.

We will apply the rationale of *Dodge–Farrar* to the evidence supporting Shelton's challenged restitution claims. We first address the charges for massages. The records submitted by the State show that Shelton's first post-accident massage was on December 15, 2005, nearly one month after the November 19 accident. Shelton admitted that she had received massages from this same masseuse for five years prior to the accident for maintenance treatment. The only evidence in the record of the need for the massages is Shelton's testimony that "[m]y muscles were all tight and stuff and I wanted to relax them for Dr. Grandstaff, the chiropractor." There was no evidence that a chiropractor suggested that Shelton do this or opined that even the chiropractic treatment was necessitated by an injury from the automobile collision.

Shelton did not receive her first colon cleansing until January 23, 2006, over two months after the accident. She testified that at the time of the accident "the seatbelt was across the colon," that she was having "problems with elimination," that she "wasn't regu-

lar like I used to be," and that her chiropractor "recommended that maybe I should go to a colon person." The State submitted no other evidence that Shelton's problems with elimination were caused by the accident or, if so, that herbal colon cleansings are an appropriate treatment.

Shelton testified that a second chiropractor gave her a footbath as a therapeutic procedure on January 3, about one and one-half months after the collision. Her explanation of the purpose of the footbath was that the accident had "caused my body to be under an extreme amount of stress which caused my body not to be normal," that footbaths "bring out toxins in your body," that she needed "to detoxify from the injuries and stuff" in order to relax, and that she did not know whether footbaths work, but that it seemed to. The State submitted no other evidence that Shelton's stress and bodily abnormalities were caused by the accident or that footbaths are a recognized treatment for such stress or injuries.

To sustain the award of restitution for the massages, colon cleansings and footbath, we would have to hold that Shelton was competent both to diagnose the cause of her physical complaints and to prescribe treatment for those complaints. We conclude she was not a competent witness for these purposes even within the relaxed evidentiary standards applicable to restitution hearings. None of the treatments were sought soon after the accident, and it cannot be said that the accident was such a readily identifiable cause of the claimed symptoms that the causal relationship is a matter within the common knowledge and experience of the average person. Therefore, we hold that medical or expert evidence in some form was necessary in order to establish that Shelton's symptoms were caused by Card's criminal conduct and that the treatments she chose were reasonable and necessary.[2] Consequently, the State did not sustain its burden of showing that the costs for the massages, the herbal

2. This showing could be made without formal testimony or affidavit of a physician. Physicians' notes, reports, or other medical records are ad-

missible and often sufficient for such purposes. *See generally Doe*, 146 Idaho 277, 192 P.3d 1101.

colon cleansings and the footbath were awardable as restitution under I.C. § 19–5304.

The district court's appellate decision affirming the magistrate is reversed with respect to the restitution award for Shelton's massages, colon cleansings, and footbath. This case is remanded to the magistrate for amendment of the restitution order consistent with this opinion.

Judge PERRY and Judge Pro Tem WALTERS concur.