**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38129**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2011 Opinion No. 7 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 8, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOSHUA NATHANIEL COTTRELL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge; Hon. James D. Stow, Magistrate.

Order of the district court, on intermediate appeal, affirming magistrate's order of restitution, <u>affirmed</u>; order of the district court for reimbursement of costs for appointed counsel, <u>affirmed</u>.

John Adams, Kootenai County Chief Public Defender; Craig W. Zanetti, Deputy County Public Defender, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jennifer E. Birken, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Joshua Nathaniel Cottrell appeals from the district court's order, on intermediate appeal, affirming the magistrate's order of restitution after a guilty plea to obstructing an officer. Specifically, Cottrell argues: (1) there was no causal connection between the commission of the crime and the loss incurred; (2) the order of restitution is unconstitutional as applied; and (3) the amount of restitution is unreasonable under Idaho's criminal restitution statute. Cottrell also appeals the district court's order for reimbursement of costs for appointed counsel. For reasons set forth below, we affirm.

1

## FACTS AND PROCEDURE

Cottrell pled guilty to obstructing an officer, Idaho Code § 18-705, on a charge which arose from Cottrell's conduct during his arrest on December 12, 2008, for other offenses. The State sought restitution in connection with the resisting and obstructing charge for injuries sustained by Officer Sullivan, the arresting officer. After sentencing, the magistrate held a two-part restitution hearing and found:

> [T]he obstructing consisted of the Defendant failing to put his hands behind his back as directed by Officer Sullivan as part of the arrest process. The Defendant attempted to pull his right arm away from Officer Sullivan and plunged his left hand into his front left pants pocket. (The Defendant had previously been directed numerous times by Officer Sullivan to keep his hands out of his pocket and he had continuously returned his hands to his pockets.) As a result of the Defendant's conduct, which amounted to the criminal offense of Obstructing, Officer Sullivan attempted to gain control of the Defendant and in so doing twisted his right knee.

Evidence presented at the restitution hearing included: a list of costs incurred by the Idaho State Insurance Fund (ISIF), as worker's compensation insurer to Officer Sullivan, for surgery and treatment of a lateral meniscus tear in the officer's right knee; unrebutted testimony placing the date of injury as the date of Cottrell's arrest; and documentation of Officer Sullivan's pre-existing knee injury.

After argument from both parties, the magistrate took the matter under advisement and issued a written order awarding ISIF restitution in the amount of $24,921.47. The order included a finding that ISIF had denied any reimbursements for pre-existing injuries and had presented only those costs which arose from Officer Sullivan's injury occurring on the date of Cottrell's arrest. Additionally, the magistrate declined to include over $6,000 of costs, which it determined were not supported by sufficient evidence. Also, pursuant to the magistrate's restitution order, Cottrell's probation was amended to include monthly restitution payments by Cottrell in the amount of $250.

Cottrell appealed the order of restitution to the district court, arguing violations of Idaho statutes as well as state and federal constitutional principles. The district court affirmed the magistrate's order, finding there was substantial evidence to support the restitution award, the amount was reasonable, and the constitutional arguments were inapplicable to the case. Based

on the magistrate's order appointing counsel to Cottrell, which required Cottrell to pay reimbursement for the cost of appointed counsel at the conclusion of the case, the district court ordered reimbursement of costs for appointed counsel in the amount of $1,000. Cottrell timely appeals to this Court.

## II.

## DISCUSSION

### A. Standard of Review

We directly review decisions by the district court, rendered in its appellate capacity. *State v. Hudson*, 147 Idaho 335, 337, 209 P.3d 196, 198 (Ct. App. 2009). We examine the magistrate record for substantial and competent evidence to support the magistrate's findings of fact and to determine whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions flow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court as a matter of procedure. *Id.*

The decision whether to order restitution is within the discretion of the trial court, guided by consideration of the factors set forth in Idaho Code § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002). We will not overturn an order of restitution unless an abuse of discretion is shown. An abuse of discretion may be shown if the order of restitution was the result of arbitrary action rather than logical application of the proper factors in Idaho Code § 19-5304(7). *Richmond*, 137 Idaho at 37, 43 P.3d at 796. In reviewing the trial court's exercise of discretion, this Court must determine whether the trial court: (1) correctly perceived the issue as one involving the exercise of discretion; (2) acted within the outer boundaries of its discretion and consistently with any legal standards applicable to specific choices it had; and (3) reached its decision by an exercise of reason. *State v. Powell*, 125 Idaho 889, 891, 876 P.2d 587, 589 (1994).

### B. Whether a Causal Connection Exists for Restitution Purposes

Cottrell first argues the magistrate abused his discretion in awarding restitution because it failed to determine whether Cottrell's actions amounted to the elements of obstruction and to what degree, if any, those actions caused the harm to Officer Sullivan. He argues that in light of the fact Officer Sullivan had a pre-existing knee injury, the "but for" cause of the new injury could just as easily be the pre-existing condition. The State asserts the facts establish a direct

3

nexus between the active resisting and obstructing conduct by Cottrell and Officer Sullivan's knee injury. Particularly, the State points out the unrebutted evidence that shows the meniscus tear was a recent injury directly caused by Officer Sullivan twisting his knee and falling to the ground with Cottrell.

Idaho's restitution statute directs a court to order a defendant, found guilty of any crime which results in an economic loss to the victim, to make restitution to the victim unless the court finds restitution would be inappropriate or undesirable. I.C. § 19-5304(2).[1] With regard to the amount of restitution, Idaho Code § 19-5304(7) provides that the court shall consider the economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate. The statutory definition of "economic loss" includes, but is not limited to, lost wages and direct out-of-pocket losses or expenses resulting from the criminal conduct. I.C. § 19-5304(1)(a). Idaho Code § 19-5304(6) provides that economic loss shall be based upon the preponderance of evidence submitted to the court by the prosecutor, defendant, victim, or presentence investigator.

This Court has held that a defendant can only be ordered to pay restitution where the evidence shows the victim's economic loss was caused by the criminal conduct for which the defendant is guilty. *State v. Shafer*, 144 Idaho 370, 372, 161 P.3d 689, 691 (Ct. App. 2007). In *Shafer*, the defendant pled guilty to leaving the scene of an accident. There, we concluded that the victim's injuries from the accident itself did not result from the defendant's criminal conduct of leaving the scene because the crime itself did not establish responsibility for the accident. *Id.* at 373, 161 P.3d at 692. In so finding, we mirrored the reasoning of other courts explaining that an order of restitution requires a "causal connection between the conduct for which the defendant is convicted and the damages the victim suffers." *Id.* at 372, 161 P.3d at 691 (quoting *State v. Starkey*, 437 N.W.2d 573, 574 (Iowa 1989)). Because the victim's injuries occurred from the

---

[1] An insurer of the injured person, in this case the Idaho State Insurance Fund, is a victim within the definition of the statute. I.C. § 19-5304(1)(e)(iv); *State v. Taie*, 138 Idaho 878, 879-80, 71 P.3d 477, 748-79 (Ct. App. 2003).

4

accident and prior to the criminal conduct of leaving the scene of an accident by the defendant, we did not uphold the restitution award on that basis.[2]

More recently in *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011), the Idaho Supreme Court echoed the holding in *Shafer*: "[I]n order for restitution to be appropriate, there must be a causal connection between the conduct for which the defendant is convicted and the injuries suffered by the victim." The Court articulated that causation consists of actual cause and true proximate cause--the first being whether a particular event produced a particular consequence, and the second, a test of foreseeability. *Corbus*, 150 Idaho at 602, 249 P.3d at 401 (citing *State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009)). For actual cause, the "but for" test is used where two or more possible causes are not acting concurrently. *Corbus*, 150 Idaho at 602, 249 P.3d at 401. The test for proximate cause is whether the injury and manner of occurrence are so highly unusual that a reasonable person, making an inventory of the possibilities of harm that his conduct might produce, would not have reasonably expected the injury to occur. Both are factual questions. *Id.*

In applying the two-part inquiry into causation to the facts of the case, the *Corbus* court held the defendant's criminal conduct, which supported convictions for reckless driving and eluding a police officer, was the actual cause of injuries sustained where the victim jumped out of the defendant's vehicle in the course of the police chase. The Idaho Supreme Court concluded the victim "would not have needed to do so if it had not been for [defendant]'s acts of driving recklessly and eluding police officers . . . ." *Id.* at 603, 249 P.3d at 402. It further held proximate cause existed because it was not unreasonable for the victim to jump out of the vehicle, rather than to risk more serious harm if the defendant proceeded to wreck the vehicle. The Idaho Supreme Court noted the defendant admitted to driving at speeds in excess of 100 miles per hour, without headlights on while it was dark and while there were other people on the road, thereby leaving the victim passenger with no other alternative to escape the dangerous situation. *Id.* at 604-05, 249 P.3d at 403-05. Because the victim's action was reasonable, it was

---

[2]    In *Shafer*, we nonetheless affirmed the restitution award wherein the defendant had consented to pay restitution as part of his plea agreement. *State v. Shafer*, 144 Idaho 370, 375, 161 P.3d 689, 694 (Ct. App. 2007).

foreseeable. Accordingly, the Court upheld the restitution award to the victim. *Id*. at 606, 249 P.3d at 405.

We note that neither the magistrate nor the district court in this case had the benefit of the *Corbus* case when making their rulings, but we review the magistrate's record with its guidance in mind to determine whether the record contains substantial evidence supporting a causal connection between Cottrell's criminal conduct of obstructing an officer and the injury suffered by Officer Sullivan. In his order for restitution, the magistrate specifically found:

> Officer Sullivan was injured as a result of the criminal conduct of the Defendant on December 12, 2008. Officer Sullivan's . . . attempt to control the Defendant was a reasonable and necessary reaction to, and was caused by, the criminal conduct of the Defendant. In attempting to control the Defendant, Officer Sullivan twisted his right knee and suffered a tear to the lateral meniscus of his right knee. Although Officer Sullivan had some type of current preexisting injury to his right knee and had prior surgery on that knee, the specific tear to the meniscus was caused by the twisting of his knee during the interaction with the Defendant on December 12, 2008. The above noted findings are based on the unrebutted reports and opinions of Dr. Sears, Dr. Olscamp, and Officer Sullivan . . . . The tear is the specific injury that caused the need for the surgical intervention and the time loss from work as shown by the evidence presented.

The "reports and opinions" mentioned refer to exhibits jointly submitted by the parties, which contained an independent medical evaluation indicating that, notwithstanding the previous swelling and discomfort in Officer Sullivan's right knee, it was "more-probable-than-not" that the tear of the lateral meniscus was a result of the twisting injury occurring on December 12, 2008. Cottrell did not countervail this evidence with his own evidentiary showing other than to emphasize Officer Sullivan's preexisting knee condition and to argue that Officer Sullivan did not have to tackle Cottrell to the ground when arresting him.

We conclude there was substantial evidence to support the magistrate's finding that Cottrell's acts of obstructing an officer caused the injury to Officer Sullivan's knee. First, actual cause is satisfied because the evidence shows it was Cottrell's acts of attempting to pull away from Officer Sullivan during arrest that precipitated the need for Officer Sullivan to gain control of Cottrell and, in so doing, twist his knee.[3] Though there was a preexisting knee condition, the

---

[3]    As to actual cause, the "but for" test is not applicable because, as Cottrell points out, the preexisting knee condition may be a concurrent cause. *See State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011).

independent medical evaluation provided substantial evidence that it was probable the meniscus tear on that same knee occurred due to the twisting motion. Cottrell provided no evidence to contradict the independent medical evaluation or show that the tear could have resulted from another source. The record supports the magistrate's finding that Cottrell's actions produced the particular consequence--specifically, the tear to Officer Sullivan's right knee lateral meniscus.

Second, as to proximate cause, the magistrate found that Officer Sullivan's attempt to control Cottrell was a reasonable and necessary reaction to Cottrell's obstructive actions. Although the magistrate did not make the finding in terms of foreseeability, if a person is reasonable in taking a particular action, it is foreseeable. *See Corbus*, 150 Idaho at 603, 249 P.3d at 402. It is no defense to say Officer Sullivan did not have to tackle Cottrell any more than it was a defense in *Corbus* to say that the passenger did not have to jump out of the vehicle--an argument that was put forward and rejected by the Idaho Supreme Court. This argument is more accurately an attempt to point to an intervening cause, meaning a voluntary act by another that breaks the causal chain. *Id*. at 602, 605, 249 P.3d at 401, 404. To break the causal chain, though, requires that the victim's conduct was unforeseeable and an extraordinary occurrence. *Id.* at 606, 249 P.3d at 405. Cottrell makes no argument that Officer Sullivan's reaction was excessive, extraordinary, or unreasonable. The record shows that Cottrell repeatedly dismissed Officer Sullivan's requests for Cottrell to cooperate and submit to arrest. It was only after Cottrell continued to evade Officer Sullivan that Officer Sullivan took actions to control Cottrell. Therefore, it was foreseeable that Cottrell's conduct would elicit a physical response from Officer Sullivan, putting Officer Sullivan in a position to injure his knee.

Finally, Cottrell's reliance on *Shafer* is a misreading of the case. Cottrell argues that establishing the nexus set forth in *Shafer* requires a finding as to how Cottrell's actions amount to the elements of obstructing an officer. In *Shafer*, this Court reviewed the elements of the offense of leaving the scene of an accident not because the trial court was required to make a second showing after a guilty plea as to how the defendant's actions amounted to the offense, but to point out that none of the elements imposed liability for an accident which occurred *prior to* the criminal conduct. *Shafer*, 144 Idaho at 373, 161 P.3d at 692. In comparison, the Idaho Supreme Court in *Corbus* distinguished the facts of its case from those in *Shafer* on the basis that the victim was injured *during* and *as a result of* Corbus's criminal conduct. *Corbus*, 150 Idaho at 605, 249 P.3d at 404. As restitution is decided only after a plea of guilty or a conviction

7

following a trial--both of which indicate conduct amounting to elements of the offense--there is nothing in either *Shafer* or *Corbus* that requires another finding that the defendant's actions amount to the elements of the crime when determining causation. Accordingly, the district court did not err in affirming the magistrate's ruling that Officer Sullivan's injury and economic loss resulted from the criminal conduct of Cottrell, as required by the restitution statute.

## C.      Whether the Order of Restitution Is Unconstitutional as Applied

Next, Cottrell asserts the Excessive Fines Clauses of the United States Constitution and the Idaho Constitution, as applied to Cottrell, preclude restitution in the amount ordered by the magistrate. He points to federal constitutional principles that show some financial assessments, other than traditional fines, are subject to the Excessive Fines Clause and argues such principles make the clause applicable to restitution. Cottrell urges this Court to similarly apply Idaho's Excessive Fines Clause to restitution and find that, in this case, the amount of the award is unconstitutional.

The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Though the Excessive Fines Clause of this amendment has not been explicitly applied to the states,[4] Article 1, section 6 of the Idaho Constitution contains an Excessive Fines Clause that is identical. While federal constitutional standards do not dictate a particular result under a similar provision in the Idaho Constitution, *see State v. Agundis*, 127 Idaho 587, 591-92, 903 P.2d 752, 756-57 (Ct. App. 1995), where there is nothing to suggest that Idaho's Constitution provides greater protection than the United States Constitution, we seriously consider federal constitutional standards in determining the parameters of our own similar provisions. *State v. Mubita*, 145 Idaho 925, 932, 188 P.3d 867, 874 (2008), *abrogated on other grounds by Verska v.*

---

[4]      The United States Supreme Court has yet to hold that the Excessive Fines Clause is applicable to the states, although it has applied the prohibition in the Eighth Amendment against cruel and unusual punishment. *Robinson v. California*, 370 U.S. 660, 667 (1962). Nonetheless, many state courts function under the assumption that states are subject to the Excessive Fines Clause, *see Baze v. Rees*, 553 U.S. 35, 47 (2008) (stating in dicta the whole of the Eighth Amendment is applicable to the states), and in at least one Idaho case, our courts have also proceeded under this assumption. *See Idaho Dep't of Law Enforcement v. Free*, 126 Idaho 422, 423 n.2, 885 P.2d 381, 382 n.2 (1994).

8

*Saint Alphonsus Reg'l Med. Ctr.*, ___ Idaho ___, ___ P.3d ___ (Nov. 9, 2011). In the context of other Eighth Amendment questions, the Idaho Supreme Court has generally held that the equivalent provisions in the Idaho Constitution provide co-extensive protection. *See e.g. Idaho Dep't of Law Enforcement v. Free*, 126 Idaho 422, 423-24, 885 P.2d 381, 382-83 (1994) (subjecting Idaho statute regarding forfeiture to the federal Excessive Fines Clause analysis); *State v. Brown*, 121 Idaho 385, 394, 825 P.2d 482, 491 (1992) (Idaho's test that a criminal sentence is cruel and unusual when it is "out of proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable people" is essentially equivalent to the federal "grossly disproportionate" test). Therefore, we look not only to Idaho law in interpreting the extent of protection our Excessive Fines Clause affords, but we also consider applicable federal principles.

The Excessive Fines Clause of the United States Constitution is a limit on the government's power to extract payments as punishment for an offense. *United States v. Bajakajian*, 524 U.S. 321, 328 (1998); *Austin v. United States*, 509 U.S. 602, 609-10 (1993). Accordingly, payments or other imposed financial obligations are "fines," for purposes of the Eighth Amendment, only if they constitute *punishment*. *Bajakajian*, 524 U.S. at 328. In contrast, payments are remedial (and by implication fall outside of the Eighth Amendment) if they are meant to compensate for a loss. *See id.* at 329. Therefore, the first step in any question regarding excessive fines is to determine whether payments are punitive or remedial. Second, where payments are indeed intended as punishment, they may not be grossly disproportional to the gravity of the defendant's offense. *Id.* at 334. In determining whether the fine is proportional, a court considers the type of offense the defendant committed; whether it was related to other illegal activity; the possible sentence and fines for the offense and whether they confirm a minimal or greater level of culpability; and the amount of harm caused by the crime. *Id.* at 337-39.

The United States Supreme Court has not addressed the principal purpose of criminal restitution or decided whether it is generally punitive or remedial,[5] but it has provided some

---

[5] The United States Supreme Court has decided cases regarding other aspects of restitution. In particular, the Supreme Court held that the Victim and Witness Protection Act of 1982, which authorized federal courts to order restitution for certain offenses, required the conduct providing

guidance on what may or may not constitute punishment. In concluding that a forfeiture was criminal punishment within the federal Excessive Fines Clause in *Bajakajian*, the United States Supreme Court considered the following: the statute required forfeiture as an additional sanction when imposing a sentence on a person convicted of a willful violation of the statute; the order was imposed at the culmination of criminal proceedings; and the particular statute at issue provided a defense for a person without scienter. *Id.* at 328. Looking at nothing more, restitution would easily be considered punishment.

However, in a preceding case, the United States Supreme Court held that the federal Excessive Fines Clause was inapplicable to civil punitive damages between private parties. *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 260 (1989). In this earlier case, the United States Supreme Court stated the federal Excessive Fines Clause "does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." *Id.* at 263-64. Rather, the applicability of the clause is limited to those fines directly imposed by, and payable to, the government. *Id.* at 268. The Court found that although punitive damages are imposed through the aegis of the courts and serve to advance government interests--namely some aspect of punishment and deterrence--such facts were insufficient to make the damages fall within the ambit of the federal Excessive Fines Clause. *Id.* at 275. As criminal restitution is payable to the *victim*, which may or may not be the government, and the government has no right to a share of the restitution other than administrative costs of facilitating payment, criminal restitution may be considered to lay outside of the federal Excessive Fines Clause. Yet, criminal restitution is ordered in relation to a prosecution and, thus, it remains unclear whether criminal restitution is subject to the clause.

---

the basis for the conviction to cause the victim's economic loss. *Hughey v. United States*, 495 U.S. 411, 415-16 (1990). However, the *Hughey* Court did not discuss the purpose of the Act or of criminal restitution generally. Additionally, in *Kelly v. Robinson*, 479 U.S. 36, 51-53 (1986), the United States Supreme Court held that restitution, imposed as a condition of probation, was a "fine" or "criminal penalty" for the limited purpose of avoiding the discharge of a restitution order in bankruptcy proceedings. The decision was guided largely on the principles of federalism, *id.* at 49, and has arguably been superseded by the Mandatory Victims Restitution Act. *See United States v. Perry*, 360 F.3d 519, 529-30 (6th Cir. 2004).

In other constitutional contexts, the United States Supreme Court has stated that any characterization of a sanction as criminal punishment must first begin with the statutory language, and then a court may consider the following factors:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Hudson v. United States*, 522 U.S. 93, 99-100 (1997) (quoting *Kennedy v. Medoza-Martinez*, 372 U.S. 144, 168-69 (1963)). *Hudson* involved a sanction determined not to be criminal punishment. It was significant that the authority to issue and enforce the sanction had been given to an agency other than the criminal court and the statutory language demonstrated that the sanction was to be civil in nature. *Hudson,* 522 U.S. at 103. In sum, the decision whether a sanction is punitive or remedial depends on the type of sanction, the statutory language, and other case-by-case factors, with no one factor being particularly determinative.

With only imprecise precedent from the United States Supreme Court, federal courts are split on whether to characterize criminal restitution as punitive or compensatory (remedial). Heidi M. Grogan, Comment, *Characterizing Criminal Restitution Pursuant to the Mandatory Victims Restitution Act: Focus on the Third Circuit*, 78 TEMP. L. REV. 1079*,* 1079 (2005).[6] The majority of courts find that criminal restitution, at least in the context of the provisions of the Mandatory Victims Restitution Act (MVRA), is primarily punitive, as it is an additional sanction and has a deterrent effect. *Id.* at 1083. In considering the retroactive effect of the MVRA, some of these courts find restitution punitive because of the language in the law *requiring* restitution "in addition to . . . any other penalty authorized by law." *Id.* at 1083-84 (citing *United States v. Williams*, 128 F.3d 1239, 1241 (8th Cir. 1997)). Other courts simply refuse to find any civil purpose in criminal restitution. Grogan, *supra*, at 1084, 1086. A minority of federal courts find

---

[6] This law comment reviews cases primarily dealing with criminal restitution regarding questions of whether such awards violate the prohibition against ex post facto laws and whether restitution abates at a criminal defendant's death. However, because these analyses require determining whether restitution constitutes punishment, we find the comment informative.

criminal restitution compensatory in this context. *Id.* at 1086. They rely on the statutory focus toward assistance to victims, rather than criminal deterrence, and on traditional notions of restitution. *Id.* at 1086-87. For example, one court found the primary purpose of restitution is to make the victim whole: "[W]hile criminal law punishes offenders to benefit society, restitution is an equitable remedy made 'only to the specific victims of a defendant's criminal conduct,' and, therefore, is not punitive, but compensatory." *Id.* at 1088 (citing *United States v. Newman*, 144 F.3d 531, 538 (7th Cir. 1998)). Still, other circuits issue conflicting opinions on whether criminal restitution is punitive or compensatory depending on the particular situation. Grogan, *supra*, at 1093.

With this backdrop, we look to our own law to determine whether the restitution constitutes criminal punishment or is remedial in nature, beginning with the statute itself. This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation that will not render it a nullity. *Id.* Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

There are several aspects of our statutory scheme that are significant in considering the remedial or punitive character of criminal restitution in Idaho: restitution is not mandatory, like the federal MVRA, but rests on factual findings of the trial court, so that it may not be ordered in cases where it is unnecessary or inappropriate; restitution may be awarded regardless of whether

the defendant is incarcerated or on probation, disconnecting it from the type of punishment received and focusing on the loss of the victim; and the victim may enforce the restitution award like any civil judgment, outside and independent of the criminal court. I.C. §§ 19-5304(2), (5), 19-5305. Additionally, the evidentiary showing required to prove the need for restitution is based on a "preponderance of the evidence," generally a civil, rather than criminal, standard. Also instructive, the language in Title 19, Chapter 53 of the Idaho Code, "Compensation of Victims of Crimes," specifically separates "restitution" to victims--based on the loss and need of the victim--from "fines," *within the same chapter*, in cases of crimes of violence, which are also payable to the victim but are assessed "solely as a punitive measure against the defendant, and shall not be based upon any requirement of showing of need by the victim." I.C. § 19-5307(1). Such fines are not a substitute for restitution and may not be used to offset a restitution award. *Id.* Having such a clear distinction in the statutory framework between restitution, as restorative, and "fines," as punitive, we are convinced that the primary purpose of restitution in Idaho is remediation.

It is precisely these features that distinguish our restitution statute from Montana's statute and the Montana Supreme Court case, *State v. Good*, 100 P.3d 644 (Mont. 2004), on which Cottrell relies, holding that criminal restitution is a "fine" for purposes of the Excessive Fines Clause. First, Idaho has an entire statutory chapter regarding compensation to victims, separate and apart from sentencing statutes. *See* I.C. tit. 19, ch. 53. The Idaho code requires a restitution order to be separate from the sentence. Montana's restitution requirement is found within the statute titled "Sentences that may be imposed" and includes restitution *as part of the sentence*. Mont. Code § 46-18-201(5). Second, restitution awards are not required in every case in Idaho; they are mandatory in Montana. *Id.* Finally, Montana's Supreme Court has held there is nothing in its state statutes that requires finding direct cause between the defendant's conduct and the loss of the victim. *State v. LaTray*, 11 P.3d 116, 118 (Mont. 2000). Without having to establish direct causation, restitution in Montana is more plainly based on culpability for the underlying crime itself and not the remedial purpose of compensating for a loss the defendant actually and proximately caused a victim.

Moreover, our cases have said the primary policy behind criminal restitution in Idaho is that of favoring full compensation to crime victims who suffer economic loss. *State v. Smith*, 144 Idaho 687, 692, 169 P.3d 275, 280 (Ct. App. 2007); *State v. Richmond*, 137 Idaho 35, 37, 43

13

P.3d 794, 796 (Ct. App. 2002); *State v. Russell*, 126 Idaho 38, 39, 878 P.2d 212, 213 (Ct. App. 1994). Another related purpose of restitution is "to obviate the need for victims to incur the cost and inconvenience of a separate civil action in order to gain compensation for their losses." *State v. Card*, 146 Idaho 111, 114, 190 P.3d 930, 933 (Ct. App. 2008); *see also State v. Parker*, 143 Idaho 165, 167, 139 P.3d 767, 769 (Ct. App. 2006); *State v. Waidelich*, 140 Idaho 622, 624, 97 P.3d 489, 491 (Ct. App. 2004); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). In this sense, restitution is more about victim assistance than it is about criminal punishment. While it is true that restitution orders also operate for the benefit of the State, in part because they promote the rehabilitative and deterrent purposes of the criminal law, *State v. Olpin*, 140 Idaho 377, 378, 93 P.3d 708, 709 (Ct. App. 2004), all civil penalties--whether or not they constitute punishment--have some deterrent effect. *See Hudson*, 522 U.S. at 102.

We conclude criminal restitution in Idaho is remedial and compensatory in nature, rather than punitive. Therefore, the Excessive Fines Clauses of the United States and Idaho Constitutions are inapplicable to Idaho criminal restitution awards. Such a conclusion obviates the need to decide whether the restitution award in this case is excessive.

**D.     Whether the Order of Restitution Is Unreasonable**

Cottrell further argues the restitution award is unreasonable in light of his lack of financial resources and the fact that Officer Sullivan's expenses have been fully covered by insurance. A trial court's determination of the amount of restitution is discretionary and will not be disturbed on appeal absent an abuse of discretion. *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *State v. Lombard*, 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct. App. 2010); *Card*, 146 Idaho at 114, 190 P.3d at 933. In determining an amount for restitution, a court must consider a defendant's indigency. I.C. § 19-5304(7). However, a defendant's "inability to pay neither precludes nor limits a restitution award," but is one factor, among others, when a court makes a discretionary restitution determination. *Olpin*, 140 Idaho at 379, 93 P.3d at 710. We have upheld restitution awards under more severe circumstances than in the instant case: where the defendant, due to injury, appeared unlikely to regain employment in his previous occupation after his release from custody, *State v. Taie*, 138 Idaho 878, 880, 71 P.3d 477, 479 (Ct. App. 2003), and where the defendant's age and term of imprisonment made it questionable whether he would ever be able to repay the full restitution amount, *Bybee,* 115 Idaho at 543, 768 P.2d at 806. In *Bybee*, we determined a trial court may fashion a restitution award based on contemplation of

future earning capacity regardless of the earning capacity or assets of the defendant at the time of the restitution award. *Id.*

Cottrell's counsel, at sentencing, stated that Cottrell had held a steady mill job for two years and was hoping to get certified on additional machinery to earn more money to support his family. Presumably to protect that employment, the magistrate authorized work release when imposing sentence, which Cottrell took advantage of. Later, at the restitution hearing, Cottrell's counsel pointed out that the magistrate needed to consider the financial resources of Cottrell in determining whether to order restitution. Counsel stated Cottrell's financial resources weighed against any restitution award, but presented no additional evidence or argument in support thereof. From the record, although it is somewhat unclear, it appears that by the time of the second restitution hearing, Cottrell had been released from jail, but was no longer employed. Whether the magistrate was aware of Cottrell's employment status at the latter restitution hearing is not within the record on appeal. Nonetheless, as we stated in *Bybee*, the magistrate was free to consider the future earning capacity of Cottrell based on the information regarding his last employment and experience in the mill. We find nothing in the record that points to Cottrell's inability to regain employment, a lessened earning capacity because of age or injury, or any other financial factors so weighing in Cottrell's favor as to preclude a restitution award. Without such evidence, we cannot say the magistrate abused his discretion in awarding restitution.

Next, Cottrell's argument that the lack of out-of-pocket expenses to Officer Sullivan makes the restitution award unreasonable is similarly unavailing. In *Taie*, this Court held that basing the amount of restitution for an insurer on the benefits paid by the insurer for property damage caused by the defendant was not an abuse of discretion where the benefit amounts were supported with sufficient evidence. *Taie*, 138 Idaho at 879-80, 71 P.3d at 478-79. The restitution statute encompasses insurers as victims for purposes of criminal restitution, and where the defendant provided no evidence showing the amount of benefits were inflated or unreasonable, the victim insurer was entitled to recover its loss. *Id.* at 880, 71 P.3d at 479.

In this case, ISIF is a victim and the evidence shows that the restitution award was based on a list of expenses incurred by ISIF and provided to the magistrate. As in *Taie*, Cottrell provided nothing to show the amount of benefits paid were greater than required under the insurance contract or unreasonable in relation to the harm suffered by Officer Sullivan. That Officer Sullivan did not have to directly pay for his injuries is irrelevant for purposes of

15

determining the economic loss caused by Cottrell's criminal conduct. *See* I.C. § 19-5304(2) ("The existence of a policy of insurance covering the victim's loss shall not absolve the defendant of the obligation to pay restitution.").

Lastly, we address Cottrell's argument that the magistrate abused his discretion in amending probation to include monthly restitution payments of $250 and that the probation conditions imposed by the court contributed to his indigency. Restitution orders are to be entered at the time of sentencing or such later date as deemed necessary by the court. I.C. § 19-5304(6). Therefore, judges may reserve the issue of restitution and still, in fashioning an appropriate sentence, exercise wide discretion both in deciding whether to impose probation and in deciding if the terms and conditions of probation will include restitution payments. I.C §§ 19-2601(2) (courts may decide necessary terms and conditions of probation), 19-5304(6) (conditions of probation may include restitution payments).[7] Where a restitution determination takes place after sentencing and has been left open in a probation order, a sentencing court retains authority to modify that condition of probation at any time during the probationary period. I.C. § 20-221; *see also State v. Dorsey*, 126 Idaho 659, 661, 889 P.2d 93, 95 (Ct. App. 1995) (holding that a sentencing court retains authority to issue a restitution order, effectively modifying a condition of probation, even three years after the original probation order was entered). Although restitution orders are generally left to the discretion of the sentencing court, in reviewing restitution payments imposed as a condition of probation, this Court has expressed caution regarding orders that require installment payments or that set a deadline for satisfaction of the full amount of restitution where the defendant has no assets and no present earning capacity. *See Bybee*, 115 Idaho at 543, 768 P.2d at 806.

We conclude the magistrate did not abuse his discretion in ordering $250 monthly restitution payments as a condition of probation. Contrary to Cottrell's assertion that the probation condition relating to restitution imposed by the court caused him to lose his job and

---

[7]     Cottrell argues that restitution payments, in his case, also serve no rehabilitative purpose and, thus, violate the requirement that a condition of probation be reasonably related to rehabilitation. *State v. Parker*, 143 Idaho 165, 168 139 P.3d 767, 770 (Ct. App. 2006). This argument has no merit. "Victim reimbursement 'facilitates rehabilitation by confronting the defendant with the consequences of his or her criminal conduct and forcing the defendant to accept financial responsibility for the resulting harm.'" *Id.* (quoting *State v. Breeden*, 129 Idaho 813, 816, 932 P.2d 936, 939 (Ct. App. 1997).

16

contributed to his indigency, the record reveals it was Cottrell's violation of work release rules that resulted in the loss of his job. Furthermore, Cottrell was no longer in custody at the time restitution was ordered and we find no argument or evidence that Cottrell was without a present or future earning capacity. Although it would be unreasonable to expect that the restitution could be fully paid as part of a two-year misdemeanor probation term, whatever amount of restitution that remains unpaid at the end of the probationary period may be pursued by the victim as a civil judgment. *See* I.C. § 19-5305; *Bybee*, 115 Idaho at 543, 768 P.2d at 806. If the monthly restitution payments became overly difficult, if not altogether impossible to make due to his circumstances, Cottrell could have moved for a review or modification of probation conditions under Idaho Code § 20-221. Therefore, we conclude the magistrate did not abuse his discretion in amending Cottrell's probation to include restitution payments. To the extent Cottrell complains of other associated fees and costs of probation, none of these are contained or addressed in the restitution order, which is the subject of this appeal, and therefore, will not be addressed.

**E.  Whether the Order for Reimbursement of Costs for Appointed Counsel Is Appropriate**

Cottrell asserts that, although the court has discretion in ordering reimbursement for legal services provided by the County, the district court's order of reimbursement of costs for appointed counsel is misplaced. He argues the financial nature of the appeal and the unconstitutional and unreasonable restitution award make the order for reimbursement "patently unjust."

Reimbursement of costs for legal services provided by the County to a needy person is authorized under Idaho Code §§ 19-854 and 19-858. When considering whether to order reimbursement, a court may look at a defendant's inability to pay by considering income, property owned, outstanding obligations, and the number and ages of dependents. I.C. § 19-854. Prior to 2001, a court could only order reimbursement of costs to the extent it found the defendant had the present ability to pay the costs. *State v. Wilson*, 136 Idaho 771, 774, 40 P.3d 129, 132 (Ct. App. 2001). However, a 2001 amendment added subsection (d), which states in part, "The immediate inability of the needy person to pay the reimbursement shall not, in and of itself, restrict the court from ordering reimbursement." 2001 Idaho Sess. Laws ch. 287 § 1. Just as a court is free to consider future earning capacity and future ability to pay when determining an appropriate restitution order, a court is free to do the same when it orders reimbursement of

17

costs for legal services on appeal. *Wilson*, 136 Idaho at 774, 40 P.3d at 132. We, therefore, find no error in the district court's order for reimbursement.[8] Whether or not Cottrell had or has the present ability to pay, it was within the district court's discretion to order the reimbursement.

## III.

## CONCLUSION

We conclude there was substantial evidence in the record to show causation between Cottrell's criminal conduct and the injury incurred for restitution purposes. We further hold that the Excessive Fines Clauses of the United States and Idaho Constitutions are inapplicable to criminal restitution awards and that the restitution award was reasonable and not an abuse of discretion. Therefore, we affirm the district court's order, on intermediate appeal, affirming the restitution award imposed by the magistrate. We also affirm the district court's order of reimbursement of costs for appointed counsel in the amount of $1,000.

Chief Judge GRATTON and Judge LANSING **CONCUR.**

---

[8] The arguments Cottrell presents to this Court to challenge the reimbursement order are substantially the same as those he put forward to the district court in his challenge to the restitution order. The district court thoroughly reviewed and analyzed each of these arguments and rejected them. As the arguments were without merit to challenge the restitution award, we also find them without merit to challenge the reimbursement order.