**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40720**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 46** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: May 30, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| SHAWN O'SHAY DAVIS, II, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

Restitution order, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant. Brian R. Dickson argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

_____

LANSING, Judge

Shawn O'Shay Davis, II pleaded guilty to grand theft by possession of a stolen motorcycle. He appeals from the district court's order of restitution, complaining that he should not be responsible for certain damage to the motorcycle that was caused by a third party to whom he sold it.

## I.

## BACKGROUND

A stolen motorcycle was recovered by law enforcement, but in a damaged condition. Davis was charged with grand theft by possession of stolen property, Idaho Code §§ 18-2403(4) and 18-2407(1), for taking possession of the motorcycle when he knew or should have known that it had been stolen. Davis pleaded guilty pursuant to a plea agreement that specified he would pay restitution, but there was no agreement as to either the amount of restitution or the particular damage to be covered. Therefore, a restitution hearing was held after sentencing.

1

At the restitution hearing, the motorcycle's owner and a mechanic testified that the motorcycle had been in good condition with upgraded accessories before it was stolen, but that parts of the motorcycle had since been sanded, painted, stripped, and altered. In addition, there was damage to the body, including a bent frame and dented muffler, leading both men to conclude that it had been wrecked. The motorcycle also had mechanical damage to the engine, which the mechanic attributed to riding it hard while low on oil. The State introduced evidence that repairs would cost $2,475.01 to return the motorcycle to its prior condition.

Davis also testified at the hearing, acknowledging that when he purchased the motorcycle he suspected it was "hot" because the price "was too good to be true." He admitted to changing the motorcycle's appearance by painting the fenders, removing decals, and removing the arm guards; but he denied making any of the other alterations. Davis also denied causing any of the body or engine damage to the motorcycle, contending that he rode it only once for about a block without incident before selling it for a low price to his friend, Travis Kearl. According to Davis, Kearl helped Davis spray paint the fenders and then decided to purchase it from Davis after Davis determined he "didn't want nothing to do with it." The police ultimately recovered the motorcycle from Kearl. Davis conceded that that he was responsible to pay restitution to remedy the alterations he made, and he did not challenge the claimed cost of repairs. He contended, however, that he was not liable for any damage to the motorcycle allegedly caused by Kearl after Davis's possession ended.

The district court held that although the State did not prove that Davis personally caused the damage in question, he nonetheless was responsible to pay restitution for the entire cost of the repairs. Among other things, the district court determined that Davis's conduct was the proximate cause of the victim's economic loss because it was reasonably foreseeable when Davis sold the motorcycle to Kearl that Kearl would cause additional damage. Accordingly, the district court ordered Davis to pay restitution in the amount of $2,475.01. On appeal, Davis raises the same argument presented to the district court.

## II.

## ANALYSIS

Idaho's general criminal restitution statute permits a court to order restitution for any crime that "results in an economic loss to the victim." I.C. § 19-5304(2). The statute defines victim as "a person or entity, who suffers economic loss or injury *as the result of the defendant's*

*criminal conduct.*" I.C. § 19-5304(1)(e)(i) (emphasis added). The term economic loss includes "the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses *resulting from the criminal conduct.*" I.C. § 19-5304(1)(a) (emphasis added). Therefore, restitution is appropriate only if there is a causal connection between the conduct for which the defendant is convicted and the injuries suffered by the victim. *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011). *See also State v. Cottrell*, 152 Idaho 387, 392, 271 P.3d 1243, 1248 (Ct. App. 2012). The applicable proximate cause analysis has been described by the Idaho Supreme Court as follows:

> [C]ausation consists of actual cause and true proximate cause. Actual cause is the factual question of whether a particular event produced a particular consequence. The "but for" test is used in circumstances where there is only one actual cause or where two or more possible causes were not acting concurrently. On the other hand, true proximate cause deals with whether it was reasonably foreseeable that such harm would flow from the negligent conduct. In analyzing proximate cause, this Court must determine whether the injury and manner of occurrence are so highly unusual that a reasonable person, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur.

*Corbus*, 150 Idaho at 602, 249 P.3d at 401 (internal citations and quotation marks omitted).

Davis contends that his theft was not the proximate cause of part of the victim's economic loss because Kearl's conduct was an intervening, superseding cause of damages that occurred while the motorcycle was in his possession. "An intervening, superseding cause generally refers to an independent act or force that breaks the causal chain between the defendant's culpable act and the victim's injury." *State v. Lampien*, 148 Idaho 367, 374-75, 223 P.3d 750, 757-58 (2009). The intervening cause "becomes the proximate cause of the victim's injury and removes the defendant's act as the proximate cause," but to relieve a defendant of liability, "the intervening cause must be an unforeseeable and extraordinary occurrence." *Id.* If the possible consequence might reasonably have been contemplated or the defendant should have foreseen the possibility of harm of the kind that could result from his act, the defendant remains criminally liable. *Id.*

Proximate cause analysis to determine the scope of restitution is illustrated by *Corbus*, where the defendant was convicted of felony eluding a police officer when he ignored a police signal to stop and led police on a high-speed car chase. During the chase, a passenger leapt from the defendant's vehicle and suffered physical injuries. The district court specifically found that

3

the passenger jumped to avoid the serious injury that could result from Corbus's driving. Our Supreme Court affirmed the district court's determination that the defendant's criminal conduct was both the actual and proximate cause of the passenger's medical expenses. The Court explained, "Given the dangerous manner in which Corbus was driving that night, it was reasonably foreseeable that his passenger would decide to jump from the vehicle to avoid a potentially serious car accident." *Corbus*, 150 Idaho at 605, 249 P.3d at 404.

Proximate cause analysis was also conducted in *Lampien*, 148 Idaho 367, 223 P.3d 750.[1] In that case, the police went to a home to serve an arrest warrant. The wife of the subject of the warrant told the police that her husband was not in the home, and when asked whether her husband had a gun, said she believed that he did not. When the police entered, the husband shot three officers. The wife was subsequently convicted of harboring and protecting a felon. The record showed that Lampien knew her husband had twice been convicted of violent felonies, that he owned a firearm, and that he had on a previous occasion used the gun to shoot himself in order to evade capture. In these circumstances, the Idaho Supreme Court held that the district court did not err in finding that the husband's act of shooting at the officers was foreseeable, and therefore Lampien's crime was the proximate cause of the officers' injuries. *Id.* at 375-76, 223 P.3d at 758-59. *See also Cottrell*, 152 Idaho at 392-94, 271 P.3d at 1248-50.

According to Davis, his case is distinguishable from the facts of *Corbus* and *Lampien*, and a proper proximate cause analysis relieves him of restitution liability for damage to the motorcycle caused by Kearl. Although we agree that Davis's offense differs in a significant way from those in *Corbus* and *Lampien*, we do not agree that this distinction warrants relief for Davis. In *Corbus* and *Lampien*, proximate cause analysis was conducted to determine liability for injuries that were an *unintended* consequence of the defendant's criminal conduct. That is, the purpose or intent of the criminal act was not to cause the economic loss that occurred. The restitution liability in those cases was akin to tort damages for negligence. By contrast, when theft is committed, the victim's economic loss *is the very intent and purpose of the crime*. That is, one who is guilty of theft has, by definition, intended to deprive the owner of the entire value

---

[1]    The proximate cause analysis in *State v. Lampien*, 148 Idaho 367, 223 P.3d 750 (2009) was not employed to determine restitution liability but to address the defendant's argument that the injured officers were not "victims" of her crime and therefore not entitled to address the court at her sentencing hearing.

4

of the stolen property (and did deprive the owner of the property at least temporarily). The specific crime to which Davis pleaded guilty, theft by possession of stolen property, is defined by I.C. § 18-2403(4) to include an intent or expectation that the victim will be permanently deprived of the stolen items:

> (4) A person commits theft when he knowingly receives, retains, conceals, obtains control over, possesses, or disposes of stolen property, knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen, and
> (a) *Intends to deprive the owner permanently of the use or benefit of the property*; or
> (b) Knowingly uses, conceals or abandons the property in such manner *as to deprive the owner permanently of such use or benefit*; or
> (c) Uses, conceals, or abandons the property *knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit.*

(emphasis added). The charging information in this case alleged that Davis "did retain, obtain control over and possess stolen property . . . knowing that retaining, control over and possession of said property would deprive the owner thereof of their property."

Thus, the crime to which Davis pleaded guilty included as an element an intent or knowledge that his criminal act would deprive the owner permanently of the use or benefit of the motorcycle. This crime was completed upon Davis's taking possession of the motorcycle under circumstances in which he knew or should have known that it was stolen and with the intent to permanently deprive the victim of its use or benefit. At that point, his crime had caused economic loss to the victim of the full value of the motorcycle. Restitution was thereupon awardable for "the value of the property taken." I.C. § 19-5304(1)(a). Because the loss of the full value of a stolen item is the direct and intended consequence of a theft offense, the perpetrator's restitution liability is ordinarily the full value of property that was stolen.

Nevertheless, if the stolen property is ultimately recovered in whole or in part, in the original or an altered condition, the victim's economic loss is diminished by the value of the returned items in their then-existing condition, and the defendant's restitution liability would be reduced accordingly because restitution is limited to "economic loss which the victim actually suffers." I.C. § 19-5304(2). *See generally State v. Smith*, 144 Idaho 687, 692-93, 169 P.3d 275, 280-81 (Ct. App. 2007). If the stolen property is recovered in a damaged condition, the amount of the credit against restitution liability is generally not dependent upon *who* caused any damage

5

that may have reduced the property's value because the thief is not entitled to credit for the value the returned property *would have had* if it had not been damaged by a third party to whom the thief transferred it. This measure of restitution is consistent with the measure of civil damages in an action for conversion of property. *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 742, 979 P.2d 605, 615 (1999) (holding "an owner who retakes converted property may recover damages based on value at the time of conversion, but in mitigation, the wrongdoer is entitled to credit for value of property when returned"); *Nat'l Motor Service Co. v. Walters*, 85 Idaho 349, 361, 379 P.2d 643, 651 (1963) (same).

In the present case, proximate cause analysis of the damage to the motorcycle does not diminish Davis's responsibility for restitution. The inquiry is "whether it was reasonably foreseeable that such harm would flow from" the crime. *Corbus*, 150 Idaho at 602, 249 P.3d at 401. A court must determine whether the injury and manner of occurrence are so highly unusual "that a reasonable person, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." *Id.* When Davis sold the motorcycle to Kearl, it was foreseeable that the victim would lose the full value of the motorcycle, for that was Davis's very intent. It was intended that the victim would suffer that full economic loss regardless of what Kearl did with or to the motorcycle. The fortuity that the motorcycle was ultimately recovered by law enforcement, albeit in a damaged condition, inures to Davis's benefit because it reduces his liability by reducing the victim's loss; it does not alter the foreseeability of that economic loss.

Davis's contention that Kearl's conduct was an intervening, superseding cause that broke the chain of proximate causation is without merit. Kearl's conduct was neither unforeseeable nor extraordinary, as required for a break in the causal chain. Indeed, some of Kearl's actions in damaging the motorcycle while it was in his possession were a continuation of what he and Davis had already begun together while the property was in Davis's possession, that is, altering the motorcycle to mask its appearance.

Relying upon the Supreme Court's statement in *Lampien*, 148 Idaho at 375, 223 P.2d at 758, that "[i]n most contexts, a crime or an intentional tort constitutes an 'independent intervening, cause,'" Davis argues that Kearl's actions were an intervening, superseding cause because Kearl's acts were criminal. Davis points out that because Kearl purchased the motorcycle at a "suspiciously" low price with knowledge that its appearance had been altered, he

6

was also demonstrably guilty of the crime of possession of stolen property.  Contrary to Davis's premise, however, further criminal conduct by a person down the causal chain does not, *ipso facto*, relieve an initial offender from restitution liability.  Illustrative is the circumstance presented in *Lampien*, the case upon which Davis relies, where our Supreme Court held that the husband's criminal act of shooting three officers, while arguably extraordinary, was not an intervening cause because it was foreseeable.  *Id.* at 375-76, 223 P.3d at 758-59.

Davis has shown no error in the restitution award.  Therefore, the district court's order of restitution is affirmed.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**